IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

JONATHAN JAY HILL,                          *
                                            *
          Plaintiff,                        *
                                            *          Civil No. DKC 15-1027
     v.                                     *
                                            *
                                            *
CAROLYN W. COLVIN,                          *
Acting Commissioner of Social Security,     *
                                            *
          Defendant.                        *
                                  ************

## REPORT AND RECOMMENDATION

Plaintiff Jonathan Jay Hill seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment and alternative motion for remand under the fourth sentence of 42 U.S.C. § 405(g)[1] (ECF No. 17), Defendant's Motion for Summary Judgment (ECF No. 18), and Plaintiff's "Reply Memorandum to Defendant's Motion for Summary Judgment" (ECF No. 21).[2]  Plaintiff contends that the administrative record does

---

[1] The fourth sentence of 42 U.S.C. § 405(g) provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002).  For example, "the denial of summary

not contain substantial evidence to support the Commissioner's decision that he is not disabled. Under Standing Order 2014-01, this matter has been referred to the undersigned for pretrial management and for proposed findings of fact and recommendations under 28 U.S.C. § 636(b)(1)(B) and L.R. 301(5)(b)(ix).  No hearing is necessary.  L.R. 105(6).  For the reasons that follow, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment (ECF No. 18) be **GRANTED**, Plaintiff's Motion for Summary Judgment and alternative motion for remand under the fourth sentence of 42 U.S.C. § 405(g) (ECF No. 17) be **DENIED**, and Defendant's final decision be **AFFIRMED**.

# I

## Background

Plaintiff was born in 1966, has a high-school education, and previously worked as a collision-center manager, service writer in the automotive industry, insurance adjuster, millwright, and service and parts manager.  R. at 28-29, 262, 267-68.  Plaintiff protectively filed applications for DIB and SSI on May 29, 2013, alleging disability beginning on May 19, 2012, due to stroke, a hole in his heart, heart surgery, severe neurocognitive deficits, sleep apnea, herniated discs in the lower back, fatigue, depression, brain damage, right-sided clumsiness and decreased dexterity, and memory and concentration problems.  R. at 200-13, 262, 266.  The Commissioner denied Plaintiff's applications initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 84-137, 142-53.  On June 30, 2014, ALJ Michael A. Krasnow held a hearing in Washington, D.C., at which Plaintiff and a vocational expert ("VE") testified.  R. at 31-83, 175-92.  After the hearing, Plaintiff amended his claim to a closed period of disability from May 19, 2012, to August 8, 2013.  R. at

---

judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable."  *Id.*

342, 346-47.  On August 19, 2014, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of May 19, 2012, through August 8, 2013.  R. at 17-30. Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on February 9, 2015.  R. at 1-5.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On April 10, 2015, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  ECF No. 1.  After Defendant filed the administrative transcript (ECF No. 11) and the parties filed their cross-motions for summary judgment, the case was referred to the undersigned for a report and recommendation for the disposition of the parties' motions (ECF No. 13).  The matter is now fully submitted.

## II

## Summary of Evidence

### A.    Opinion Evidence

On May 19, 2012, Plaintiff suffered a cerebrovascular accident ("CVA" or "stroke") and was discharged from the hospital on May 21, 2012.  R. at 500-28.

On August 6, 2013, a state agency medical consultant, J. Biddison, M.D., assessed Plaintiff's physical residual functional capacity ("RFC").  R. at 93-95, 105-07.  Dr. Biddison opined that Plaintiff could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 93, 105.  Plaintiff frequently could balance, stoop, kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds).  R. at 94, 106.  Although he had no

3

manipulative or visual limitations, Plaintiff's speaking was limited, and he was to avoid all exposure to hazards such as machinery and heights.  R. at 94-95, 106-07.

On September 5, 2013, Francis Fishburne, Ph.D., conducted a consultative psychological evaluation of Plaintiff.  R. at 798-803.  Dr. Fishburne found that Plaintiff

> earned a WAIS-IV Full Scale IQ score of 96 that falls in the average range of abilities. His WMS-IV memory scores fell in the average range.  He related well with this examiner and tolerated the evaluation without difficulty.  Should he qualify for financial benefits, he would not require the assistance of a responsible adult to manage those benefits.

R. at 802.  Dr. Fishburne's rated Plaintiff's GAF at 85.  R. at 802.[3]

On September 16, 2013, another state agency consultant, J. Patrick Peterson, Ph.D., J.D., using the psychiatric review technique under 20 C.F.R. §§ 404.1520a and 416.920a, evaluated Plaintiff's mental impairments under Listing 12.06 relating to anxiety-related disorders (R. at 91-92, 103-04).  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06.  Dr. Peterson opined that, under paragraph B of Listing 12.06, Plaintiff's mental impairment caused him to experience (1) no restriction in activities of daily living; (2) no difficulties in maintaining social functioning; (3) mild difficulties in maintaining concentration, persistence, or pace; and (4) no episodes of decompensation of extended duration.  R. at 91-92, 103-04.  Dr. Peterson did not find evidence to establish the presence of the criteria under paragraph C of Listing 12.06.  R. at 92, 104.  Dr.

---

[3]  The GAF, or global assessment of functioning, scale rates psychological, social, and occupational functioning; it is divided into ten ranges of functioning.  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000) [hereinafter *DSM-IV-TR*].  A GAF rating between 81 and 90 indicates "[a]bsent or minimal symptoms (e.g., mild anxiety before an exam), good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns (e.g., an occasional argument with family members)."  *Id.* at 34.  The current edition of the manual eliminated the GAF scale for reasons including "its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice."  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013).

Peterson ultimately found that Plaintiff's mental impairment was not severe.  R. at 92, 104.  On February 27, 2014, another state agency consultant, Wendy Silver, Psy.D., affirmed Dr. Peterson's opinion as written.  R. at 119-20, 132-33.

On February 24, 2014, another state agency medical consultant, E. Harris, M.D., again assessed Plaintiff's physical RFC.  R. at 121-22, 134-35.  Dr. Harris opined that Plaintiff could (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 121, 134.  Plaintiff occasionally could climb, balance, stoop, kneel, crouch, and crawl.  R. at 121, 134.  He had no manipulative, visual, communicative, or environmental limitations.  R. at 121-22, 134-35.

On June 24, 2014, Steven Diener, M.D., completed a "Functional Assessment (Physical)" evaluating Plaintiff's condition between May 19, 2012, and December 1, 2013.  R. at 908-09.  According to Dr. Diener, Plaintiff could sit for three and stand/walk for two hours in an eight-hour workday.  R. at 908.  Dr. Diener opined that Plaintiff "was somewhat incapacitated—unable to function in any meaningful job or routine[?] during this time."  R. at 908.  Plaintiff occasionally could bend/stoop, balance, and reach above shoulder level.  R. at 909.  He could not climb, squat, crouch, push/pull, crawl, or kneel.  R. at 909.  Plaintiff could carry a minimal amount of weight, such as five pounds, but could not lift any weight.  R. at 909.  According to Dr. Diener, Plaintiff needed rest periods throughout the day.  R. 909.

On June 26, 2014, Milan Joshi, M.D., completed a "Medical Assessment of Ability to Do Work Related Activities (Mental Assessment)."  R. at 910-13.  According to Dr. Joshi, Plaintiff's ability to make occupational adjustments was poor, and he was unable to function at work during the time Dr. Joshi saw him from January to July 2013.  R. at 910-11.  Further, because of his

decreased concentration, focus, crying spells, major depression, and organic affective disorder, Plaintiff's ability to make performance and personal-social adjustments was poor.  R. at 911-12.

**B.      Plaintiff's Testimony**

The ALJ reviewed Plaintiff's testimony in his decision:

> [Plaintiff] alleges disabling limitations due to stroke, hole in the heart, heart surgery, severe neurocognitive deficits, sleep apnea, herniated discs in the lower back, fatigue, depression, brain damage, right-sided clumsiness and decreased dexterity, and memory and concentration problems [R. at 265-80]. [Plaintiff] testified that he had a stroke in May 2012.  He had right-sided paralysis.  He was able to shower on his own after two to three weeks; he had difficulty getting dressed; he wore slip-ons shoes because he could not tie shoes. Around the house, he tried to help with chores but was unsuccessful.  He forgot half the list when he went to the grocery store and would burn the food when he tried to cook.  He could not walk very far.  For example, he could walk through a parking lot and grocery store, but then he would need to sit down.  He used the computer and keyboard partly for physical therapy.  He attended religious services once per month.  He watched his kids play lacrosse.  While working at the hardware store, he could stand and walk long enough to load his truck but then he was able to sit and drive.  [Plaintiff] tried various psychotropic medications, but they made him more depressed.  He developed pseudobulbar affect and experienced forgetfulness, anger outbursts, and crying fits.  In August 2013, [Plaintiff] started a medication regimen that began to stabilize his mood [R. at 37-73].

R. at 25.

**C.      VE Testimony**

The VE testified at the hearing that a hypothetical individual with Plaintiff's age, education, work experience, and the RFC outlined in Part III below could not perform Plaintiff's past work but could perform the unskilled, sedentary[4] jobs of security worker, quality-control worker, or grading and sorting worker.  R. at 74-76.  The VE's testimony was consistent with the

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."   20 C.F.R. §§ 404.1567(a), 416.967(a).  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  *Id.* §§ 404.1568(a), 416.968(a).

*Dictionary of Occupational Titles.*[5]   R. at 76.   A person with the limitations described in Dr. Diener's physical assessment (R. at 908-09) or Dr. Joshi's mental assessment (R. at 910-13) could not perform any work that existed in substantial numbers in the regional and national economies.  R. at 77-79.  An individual functioning with a 20% deficit in productivity would not be employable.  R. at 79.  Further, an individual absent from work at least two days per month also would not employable.  R. at 79-80.

## III

### Summary of ALJ's Decision

On August 19, 2014, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity from the alleged onset date of disability of May 19, 2012, through August 8, 2013; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform his past relevant work; but (5) could perform other work in the national economy, such as a security worker, quality-control worker, or grading and sorting worker.  R. at 22-30.  The ALJ thus found that he was not disabled from May 19, 2012, through August 8, 2013.  R. at 30.

In so finding, the ALJ found that Plaintiff had a moderate limitation in concentration, persistence, or pace.  R. at 24.  The ALJ explained:

---

[5] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1).  "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

> [Plaintiff] reported difficulty with memory, completing tasks, and concentration [R. at 290-98]. He stated he could pay attention for only five to 15 minutes at a time (Id.). He read slowly and needed to re-read instructions (Id.). He testified regarding problems with forgetfulness. However, intelligence testing in September 2013 revealed average functioning and memory [R. at 798-803]. He performed multi-step tasks including certain household chores [R. at 290-98]. Therefore, the evidence establishes only moderate limitation in concentration, persistence, and pace.

R. at 24.

The ALJ found that Plaintiff had the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except [Plaintiff] can occasionally climb ramps, stairs, ropes, ladders, and scaffolds, balance, stoop, kneel, crouch, and crawl; and he is limited to simple, routine, repetitive tasks with no production rate for pace of work." R. at 24. In determining Plaintiff's RFC, the ALJ considered Plaintiff's credibility and found that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. at 25. The ALJ found that

> various factors weigh against [Plaintiff's] credibility. First, he performed significant work activity during the closed period. He worked as many as 18 hours per week in a hardware store [R. at 37-73, 246-49, 798-803]. Second, [Plaintiff] was already unemployed at the time of his stroke, suggesting that he did not stop working due to the stroke [R. at 346-47]. Instead, [Plaintiff] was laid off in January 2012 (Id.). Third, [Plaintiff's] regular activities during the closed period suggest greater abilities than alleged. He reportedly started driving four months after his stroke; he played football with his children in September 2012; he participated in his scout group; he performed "handy man" tasks for one or two hours per week, such as hanging pictures and repairing doors [R. at 37-73]. Fourth, [Plaintiff] received unemployment benefits and applied for jobs during the closed period, suggesting notable functional abilities (Id.). He testified that he would have taken a job if offered one while receiving unemployment benefits. Fifth, [Plaintiff] made inconsistent statements about alcohol use. At the hearing, he testified that he drinks one or two drinks a few times per week. Yet, treatment notes from November 2012 state that [Plaintiff] was drinking three to four drinks per day [R. at 618-761].

R. at 25-26.   The ALJ also found that the medical evidence did not substantiate disabling limitations.  R. at 26.

The ALJ afforded "no weight" to Dr. Joshi's June 2014 opinion (R. at 910-13) because it was "not consistent with the medical evidence of record or Dr. Joshi's own treatment notes."  R. at 27.  The ALJ gave "little weight" to Dr. Diener's June 2014 opinion (R. at 908-09) because it was "internally inconsistent."   R. at 27.   The ALJ afforded "significant weight" to Dr. Fishburne's September 2013 assessment (R. at 798-803) because it was "consistent with treatment notes, which indicate improvement since [Plaintiff's] stroke."  R. at 27.  Finally, the ALJ gave "significant weight" to the opinions of the state agency medical consultants because, among other things, the evidence as a whole supported their conclusions.  R. at 27-28.

## IV

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A),  1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region  where  such  individual  lives  or  in  several  regions  of  the  country."   42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the

regulations.  20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003).  "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further."  *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant has the burden of production and proof at steps one through four.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[6]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

---

[6] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R.  §§ 404.1520(a)(4)(iv),  404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).   RFC is a measurement of the most a claimant can do despite his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id.*   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id.*  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience.  *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *See Walls*, 296 F.3d at 290; 20 C.F.R.  §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant

numbers in the national economy, then the Commissioner will find that the claimant is not

disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will

find that the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

### Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct

legal standards and whether the factual findings are supported by substantial evidence.  *See*

*Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  In other words, the issue before the Court "is

not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is

supported by substantial evidence and was reached based upon a correct application of the

relevant law."  *Id.*  The Court's review is deferential, as "[t]he findings of the Commissioner of

Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42

U.S.C. § 405(g).  Under this standard, substantial evidence is less than a preponderance but is

enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.

*See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not

conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir.

1986), or undertake to reweigh conflicting evidence, make credibility determinations, or

substitute its judgment for that of the Commissioner.  *Hancock*, 667 F.3d at 472.  Rather, "[t]he

duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."  *Smith v.*

*Chater*, 99 F.3d 635, 638 (4th Cir. 1996).  When conflicting evidence allows reasonable minds to

differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

As discussed below, it is recommended that the Court grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment or for remand under the fourth sentence of 42 U.S.C. § 405(g).

**A.    *Mascio v. Colvin***

Plaintiff first contends that, in assessing his RFC, the ALJ failed to consider adequately his moderate difficulties in maintaining concentration, persistence, or pace, contrary to *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015).  Pl.'s Mem. Supp. Mot. Summ. J. 24-26, ECF No. 17-1.  In *Mascio*, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'"  *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)).  "[T]he ability to perform simple tasks differs from the ability to stay on task.  Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace."  *Id.*  The court in *Mascio* remanded the case for the ALJ to explain why the claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in the claimant's RFC.  *Id.*

According to Plaintiff,

[t]he only mental limitation in the ALJ's RFC was that the Plaintiff "is limited to simple, routine, repetitive tasks with no production rate for pace of work."  Even assuming that "no production rate for pace work" means something different than simple, routine work, it still says nothing as to [Plaintiff's] ability to stay on task, and the ALJ's decision contains no discussion as to how it is that [Plaintiff] would

have no problem with staying on task despite having moderate limitations in
concentration, persistence or pace.

Pl.'s Mem. Supp. Mot. Summ. J. 25, ECF No. 17-1.  As discussed below, Plaintiff's contention
is unavailing.

"The Social Security Administration has promulgated regulations containing 'listings of
physical and mental impairments which, if met, are conclusive on the issue of disability.'  A
claimant is entitled to a conclusive presumption that he is impaired if he can show that his
condition 'meets or equals the listed impairments.'" *Radford*, 734 F.3d at 291 (citation omitted);
*see* 20 C.F.R. pt. 404, subpt. P, app. 1.  In addition to the five-step analysis discussed above in
Part IV and outlined in 20 C.F.R. §§ 404.1520 and 416.920, the Commissioner has promulgated
additional regulations governing evaluations of the severity of mental impairments.  20 C.F.R.
§§ 404.1520a, 416.920a.  These regulations require application of a psychiatric review technique
at the second and third steps of the five-step framework, *Schmidt v. Astrue*, 496 F.3d 833, 844
n.4 (7th Cir. 2007), and at each level of administrative review.  20 C.F.R. §§ 404.1520a(a),
416.920a(a).  This technique requires the reviewing authority to determine first whether the
claimant has a "medically determinable mental impairment."  *Id.* §§ 404.1520a(b)(1),
416.920a(b)(1).  If the claimant is found to have such an impairment, then the reviewing
authority must "rate the degree of functional limitation resulting from the impairment(s) in
accordance with paragraph (c)," *id.* §§ 404.1520a(b)(2), 416.920a(b)(2), which specifies four
broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration,
persistence, or pace; and (4) episodes of decompensation.  *Id.* §§ 404.1520a(c)(3),
416.920a(c)(3).  According to the regulations, if the degree of limitation in each of the first three
areas is rated "mild" or better, and no episodes of decompensation are identified, then the
reviewing authority generally will conclude that the claimant's mental impairment is not

"severe" and will deny benefits. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). If the claimant's mental impairment is severe, then the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). If so, then the claimant will be found to be disabled. If not, the reviewing authority will then assess the claimant's RFC. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3).

"The ALJ's decision must show the significant history and medical findings considered and must include a specific finding as to the degree of limitation in each of the four functional areas." *Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011) (per curiam) (citing 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4)). With regard to the four functional areas, which correspond to the paragraph B criteria of the listings for mental disorders, "[*a*]*ctivities of daily living* include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [the claimant's] grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(1). "In the context of [the claimant's] overall situation, [the Commissioner assesses] the quality of these activities by their independence, appropriateness, effectiveness, and sustainability. [The Commissioner] will determine the extent to which [the claimant is] capable of initiating and participating in activities independent of supervision or direction." *Id.* Moreover, "[*s*]*ocial functioning* refers to [the claimant's] capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers." *Id.* § 12.00(C)(2). Further,

"[c]oncentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* § 12.00(C)(3). "On mental status examinations, concentration is assessed by tasks such as having [the claimant] subtract serial sevens or serial threes from 100. In psychological tests of intelligence or memory, concentration is assessed through tasks requiring short-term memory or through tasks that must be completed within established time limits." *Id.* Finally, "[e]pisodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." *Id.* § 12.00(C)(4). "Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." *Id.* Episodes of decompensation may be inferred from "medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode." *Id.* "The term *repeated episodes of decompensation, each of extended duration* in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id.*

Here, the ALJ's inclusion of a limitation in the assessment of Plaintiff's RFC to "no production rate for pace of work" accounts for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace. *See Russo v. Astrue*, 421 F. App'x 184, 192 (3d Cir. 2011) (holding that hypothetical question that referenced individual who "would not have a quota to

fulfill" accounted for moderate difficulties in concentration, persistence, or pace); *Seamon v. Astrue*, 364 F. App'x 243, 248 (7th Cir. 2010) (holding that ALJ captured claimant's moderate limitation in concentration, persistence, and pace when ALJ included restriction of "no high production goals"); *Arnold v. Barnhart*, 473 F.3d 816, 820 (7th Cir. 2007) (using low production standards for moderate limitation in concentration, persistence, and pace); *Linares v. Colvin*, No. 5:14-CV-00120, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) ("The ALJ accounted for Plaintiff's limitation in pace by restricting her to 'nonproduction pace,' and he accounted for her limitation in concentration and persistence by restricting her to a stable work environment with only occasional public contact."); *see also Chase v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-2961, 2016 WL 199410, at *3 (D. Md. Jan. 15, 2016) (determining that ALJ's assessment of claimant's RFC to "no production rate or paced work" accounted for claimant's moderate limitation in concentration, persistence, or pace); *Shirey v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-15-261, 2015 WL 7012718, at *4 (D. Md. Nov. 10, 2015); *Rayman v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-3102, 2015 WL 6870053, at *3 (D. Md. Nov. 6, 2015) ("[T]he limitation to an environment with few changes and no production quotas assures that [the claimant] is not required to produce any particular volume of work-product and is not distracted or required to adapt to changes in the workplace.  Thus, the ALJ accounted for any time that [the claimant] would be off-task due to his limited ability to maintain focus."); *Gair v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-3652, 2015 WL 5774982, at *2 (D. Md. Sept. 28, 2015) (finding that ALJ adequately accounted for claimant's moderate limitation in concentration, persistence, or pace by limiting him to work with no strict production quotas).  Plaintiff's argument that remand is warranted in this case under *Mascio* thus is without merit.

**B.**     **ALJ's Consideration of Opinion Evidence**

The ALJ also considered the opinion evidence in this case and gave no weight to Dr. Joshi's opinion because it was not consistent with the doctor's treatment notes and the medical evidence of record.  R. at 27.  A treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight when well supported by medically acceptable clinical and laboratory diagnostic techniques and when the opinion is consistent with the other substantial evidence in the record.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Conversely, however, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *see Meyer v. Colvin*, 754 F.3d 251, 256 (4th Cir. 2014) ("[A] treating physician's opinion is to be accorded comparatively less weight if it is based on the physician's limited knowledge of the applicant's condition or conflicts with the weight of the evidence." (citing *Craig*, 76 F.3d at 590; 20 C.F.R. § 404.1527(c))).  An ALJ may reject a treating physician's opinion in its entirety and afford it no weight if the ALJ gives specific and legitimate reasons for doing so.  *See Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 67 (4th Cir. 2014) (per curiam) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001); *Craig*, 76 F.3d at 589-90).

Here, the ALJ noted that Dr. Joshi's opinion that Plaintiff had serious limitations in making occupational adjustments, performance adjustments, and personal-social adjustments was inconsistent with the doctor's rating of Plaintiff's GAF between 60 and 75, suggesting slight or mild to moderate symptoms or difficulties in functioning.  R. at 27.  Although Plaintiff

contends that the ALJ's affording little weight to the GAF scores in this case contradicted the ALJ's reliance on this inconsistency (R. at 28), the inconsistency of Dr. Joshi's opinion with the doctor's assessments of Plaintiff's GAF was a specific and legitimate reason to afford no weight to Dr. Joshi's opinion.  *See Melton v. Comm'r of Soc. Sec. Admin.*, 442 F. App'x 339, 341 (9th Cir. 2011); *Draper v. Colvin*, No. CV-15-01211-PHX-DGC, 2016 WL 1695678, at *5 (D. Ariz. Apr. 28, 2016) ("[The ALJ] was comparing the GAF score assessed by a particular psychologist during a particular examination to an opinion based on the same examination.  It was permissible for the ALJ to rely on the GAF score for this purpose.").

Plaintiff also maintains that the ALJ erred in affording little weight to Dr. Diener's opinion that between May 19, 2012, and December 1, 2013, he could only sit for three hours and stand or walk for two hours in an eight-hour day.  Substantial evidence, however, supports the ALJ's finding that this opinion was inconsistent with Plaintiff's report in January 2013 that he felt 90% physically improved.  R. at 27, 763.  In short, Plaintiff's arguments regarding the weight afforded by the ALJ to the opinions of Drs. Joshi and Diener are unavailing.

## C.   ALJ's Consideration of Plaintiff's Credibility

The Fourth Circuit recently reiterated the following standard in evaluating a claimant's complaints of pain or other symptoms.  *Dunn v. Colvin*, 607 F. App'x 264, 272-73 (4th Cir. 2015).  Whether "a person is disabled by pain or other symptoms is a two-step process.  First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged."  *Id.* at 272 (quoting *Craig*, 76 F.3d at 594).  "At this stage of the inquiry, the pain claimed is not directly at issue; the focus is instead on establishing a determinable underlying impairment—a statutory requirement

for entitlement to benefits—which could reasonably be expected to be the cause of the disabling pain asserted by the claimant." *Id.* at 272-73 (quoting *Craig*, 76 F.3d at 594).  Second, after the first inquiry is complete, the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work."  *Craig*, 76 F.3d at 595; *see* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).  "[T]his evaluation must take into account not only the claimant's statements about her pain, but also 'all the available evidence,' including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.) . . . ."  *Craig*, 76 F.3d at 595 (citation omitted); *see* 20 C.F.R. §§ 404.1529(c)(1)-(2), 416.929(c)(1)-(2).  The ALJ must also take into account "any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it."  *Craig*, 76 F.3d at 595; *see* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also* Social Security Ruling[7] ("SSR") 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

> Yet while "a claimant's allegations about [his] pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he] suffers."

*Stitely v. Colvin*, 621 F. App'x 148, 150 (4th Cir. 2015) (per curiam) (alteration in original) (quoting *Craig*, 76 F.3d at 595).

---

[7] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted.  20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration.  *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1).  "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law."  *Pass*, 65 F.3d at 1204 n.3.

> [T]here must be . . . a medical impairment . . . which, when considered with all evidence . . . (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.

42 U.S.C. § 423(d)(5)(A).

Thus, in light of the foregoing, an ALJ may rely upon evidence of a claimant's daily activities to evaluate subjective complaints of pain, as "[t]he only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994); *see* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). Here, the ALJ appropriately considered Plaintiff's activities in discounting his credibility (R. at 25-26), including his part-time employment, as "[w]ork activity that is not both substantial and gainful is still 'evidence relevant to the severity of [the claimant's] impairment[s],' and as such must be considered in assessing the severity of a claimant's symptoms." *Sherman v. Colvin*, No. 4:13-CV-00020, 2014 WL 3344899, at *9 (W.D. Va. July 8, 2014) (alteration in original) (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)); *see Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004) (part-time work may demonstrate ability to perform substantial gainful employment (citing *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992)); *Patton v. Astrue*, No. 1:10CV211, 2011 WL 6300361, at *5 (W.D.N.C. Dec. 16, 2011) (claimant's work and activities while in prison, among other things, provided substantial evidence to support ALJ's adverse credibility finding).   Substantial evidence thus supports the ALJ's finding that Plaintiff's activities belied his allegations regarding the functional limitations of his impairments, and Plaintiff's other arguments regarding the ALJ's credibility determination are without merit. *See Johnson*, 434 F.3d at 658; *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam) (upholding a finding of no disability where claimant managed his household, grocery shopped,

cooked, washed dishes, and walked to town every day); SSR 96-7p, 1996 WL 374186, at *5 (ALJ must consider factors such as consistency of claimant's statements with other information in record, including consistency of claimant's own statements). In short, substantial evidence supports the determination of Plaintiff's credibility by the ALJ, who in this case applied the correct legal standards.

**D.    ALJ's Consideration of Evidence**

Plaintiff further asserts that the ALJ erred in considering evidence outside the claimed period of disability and in not reciting in his decision some of the evidence within the closed period. Pl.'s Mem. Supp. Mot. Summ. J. 5-15, 31-32, ECF No. 17-1. The ALJ may consider evidence outside the disability period that is probative, however. *Townsend v. Sec'y U.S. Dep't of Health & Human Servs.*, 553 F. App'x 166, 168 n.2 (3d Cir. 2014) (per curiam); *cf. Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 345 (4th Cir. 2012) (finding that consideration of medical evidence outside relevant time period is proper when such evidence may be "reflective of a possible earlier and progressive degeneration"); *Cox v. Heckler*, 770 F.2d 411, 413 (4th Cir. 1985) (evidence should not be disregarded merely because evaluation occurred outside relevant time period so long as it may be relevant to prove disability during relevant time period). In any event, even if the ALJ had erred in considering evidence dated after August 8, 2013, the burden is on the party attacking an agency's determination to show that prejudice resulted from the error. *Shinseki v. Sanders*, 556 U.S. 396, 409-10, 129 S. Ct. 1696, 1705-06 (2009). "Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm." *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011). "[R]eversal is not required when the alleged error 'clearly had no bearing on the procedure used or the substance of [the] decision reached.'" *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th

Cir. 2004) (quoting *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248, 84 S. Ct. 1236, 1245 (1964)).  Although Plaintiff contends that the ALJ erred in considering such evidence, he fails to demonstrate any prejudice affecting the ALJ's consideration of Plaintiff's impairments, as the ALJ accounted for Plaintiff's sleep apnea and pseudobulbar affect in the RFC assessment.  R. at 28.  Moreover, even if the ALJ had erred in failing to recite certain evidence within the closed period, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)), and Plaintiff "has failed to point to *any* specific piece of evidence not considered by the Commissioner that might have changed the outcome of his disability claim."  *Id.*  Plaintiff's argument in this regard thus is without merit.

**E.     ALJ's Hypothetical Questions to VE**

Plaintiff also maintains that the ALJ failed "to note that the VE testified that a person with the limitations noted by either Dr. Joshi or Dr. Diener would be precluded from work" and that the ALJ "failed to incorporate the Plaintiff's nonexertional limitations in his hypothetical questions to the VE."  Pl.'s Mem. Supp. Mot. Summ J. 37, 38, ECF No. 17-1.  As Defendant points out, however, the ALJ's RFC assessment and hypothetical questions presented to the VE need only include limitations supported by the record (Def.'s Mem. Supp. Mot. Summ. J. 21, ECF No. 18-1).  *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (concluding that ALJ's hypothetical question need only include those impairments supported by record); *see also Fisher v. Barnhart*, 181 F. App'x 359, 364 (4th Cir. 2006) (per curiam) (hypothetical question is unimpeachable if it adequately reflects RFC for which ALJ had sufficient evidence (citing *Johnson*, 434 F.3d at 659)); *Craigie v. Bowen*, 835 F.2d 56, 57-58 (3d Cir. 1987) (holding that

ALJ is not required to credit VE testimony elicited in response to hypothetical question that includes limitations that ALJ finds not to be credible).   For the reasons discussed above, substantial evidence supports the ALJ's consideration of Plaintiff's credibility and weight given to the various opinions when determining Plaintiff's RFC.   Plaintiff's assertion regarding incomplete hypothetical questions by the ALJ to the VE thus is without merit.   *See Tanner v. Comm'r of Soc. Sec.*, 602 F. App'x 95, 101 (4th Cir. 2015) (per curiam) ("For the first time on appeal, [the claimant] argues that the agency did not meet its burden of proof regarding her ability to perform alternative work, because the vocational expert concluded that, given her functional limitations, there were no jobs that she could perform.   In so contending, however, [the claimant] overlooks the circumstance that the vocational expert only reached that conclusion upon questioning from her counsel, and that her counsel posed hypothetical questions that included severe functional limitations not supported by the medical evidence.   Indeed, when the ALJ posed hypotheticals to the VE that set out all of [the claimant's] credible limitations, the VE responded that [the claimant] could perform the jobs of packer, assembler, marker pricer, sorter, and inspector.").

In sum, for the reasons stated above, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment (ECF No. 18) be **GRANTED**, Plaintiff's Motion for Summary Judgment and alternative motion for remand under the fourth sentence of 42 U.S.C. § 405(g) (ECF No. 17) be **DENIED**, and the Commissioner's final decision be **AFFIRMED**.

## VII

## <u>Recommendation</u>

For the reasons set forth above, it is respectfully recommended as follows:

(1) The Court **GRANT** Defendant's Motion for Summary Judgment (ECF No. 18);

(2) The Court **DENY** Plaintiff's Motion for Summary Judgment (ECF No. 17);

(3) The Court **DENY** Plaintiff's alternative motion for remand under the fourth sentence

of 42 U.S.C. § 405(g) (ECF No. 17);

(4) The Court **AFFIRM** Defendant's final decision; and

(5) The Court **CLOSE** this case.

## <u>NOTICE TO PARTIES</u>

Any objections to this Report and Recommendation must be served and filed within fourteen days under Fed. R. Civ. P. 72(b) and L.R. 301(5)(b). Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen days after being served with a copy of the report may result in the waiver of any right to a *de novo* review of the determinations contained in the report, and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.


Date: June 8, 2016                                    /s/
                                               Thomas M. DiGirolamo
                                               United States Magistrate Judge